UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
THOMAS GESUALDI and JOSEPH FERRARA,
SR., as Trustees and Fiduciaries of the Local 282
Welfare Trust Fund, the Local 282, Pension Trust
Fund, the Local 282 Annuity Trust Fund, the
Local 282 Job Training Trust Fund and the
Local 282 Vacation and Sick Leave Trust Fund,

                                        Plaintiffs,                            MEMORANDUM
                                                                                      OPINION AND ORDER

               -against-                                                            CV 03-3449 (ETB)

RRZ TRUCKING CO., LLC,

                                        Defendant.
------------------------------------------------------------------------X

Before the court is the plaintiffs' application for a determination of the damages due and owing by the defendant, RRZ Trucking Co., LLC, under a Supplemental Stipulation of Settlement entered into by the parties on August 3, 2006. An inquest was held on November 4, 2010, November 8, 2010, December 10, 2010 and January 14, 2011 to determine the amount of damages due. For the following reasons, the Court finds that plaintiffs are entitled to damages in the amount of $2,096,606.50, plus reasonable attorney's fees and costs, to be determined upon the Court's receipt of proper supporting documentation from plaintiffs.

## FACTS

The underlying facts of this action are not in dispute. The plaintiffs are trustees and fiduciaries of the Local 282 Welfare, Pension, Annuity, Job Training and Vacation and Sick

Leave Trust Funds (the "Funds"), as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (Pl. Proposed Findings of Fact ¶ 1; Def. Proposed Findings of Fact ¶ 1; Compl. ¶ 3.) The Funds are multi-employer benefit plans within the meaning of ERISA, whose purpose is to collect and receive fringe benefit contributions from employers providing health, retirement, job training and vacation and sick leave benefits to eligible employees. (Pl. Proposed Findings of Fact ¶¶ 2-3; Def. Proposed Findings of Fact ¶¶ 2-3; Compl. ¶¶ 4, 6.)

The defendant, RRZ Trucking Co., LLC ("RRZ Trucking"), is a limited liability company organized and existing under the laws of the state of New Jersey. (Def. Proposed Findings of Fact ¶ 4; Compl. ¶ 12.) RRZ Trucking is a participating employer under Local 282's Restated Agreement and Declaration of Trust (the "Trust Agreeement") and was a party to the 2002-2006 New York City Heavy Construction and Excavating Contract with Local 282 (the "CBA"). (Pl. Proposed Findings of Fact ¶¶ 4-5; Def. Proposed Findings of Fact ¶ 5; Compl. ¶ 17; Pl. Ex. 5.) Under both the Trust Agreement and the CBA, RRZ Trucking was required to remit certain fringe benefit contributions to the Funds in specified amounts corresponding to the amount of hours worked by its employees covered by the CBA ("covered work"). (Pl. Proposed Findings of Fact ¶ 5; Pl. Ex. 2, 5.) RRZ Trucking was also required to remit detailed written reports setting forth the hours worked by its employees each month (the "remittance reports"). (Id.)

The Funds commenced the within action on July 18, 2003, seeking to collect allegedly delinquent fringe benefit contributions and to compel an audit of RRZ Trucking's books and records to establish the amount of unpaid contributions. (Def. Proposed Findings of Fact ¶¶ 6-7; Compl. generally.) The parties entered into a Stipulation of Settlement on December 15, 2005,

which was So Ordered by Judge Seybert, the district judge assigned to this action at that time,[1] on December 16, 2005. (Def. Proposed Findings of Fact ¶¶ 9-10; Stipulation of Settlement generally.) The Stipulation of Settlement resolved the Funds' claims against RRZ Trucking for unpaid contributions for the period September 1, 2001 to June 30, 2003. (Def. Proposed Findings of Fact ¶ 11; Stipulation of Settlement ¶ 2.) Under the Stipulation of Settlement, the Funds agreed to provide RRZ Trucking with revised audit findings and it further permitted the Funds to reopen the action within sixty days after RRZ Trucking's receipt of the revised audit findings in the event the parties were unable to resolve any disputes regarding those findings. (Def. Proposed Findings of Fact ¶¶ 12-13; Stipulation of Settlement ¶¶ 2, 5 .)

The Funds requested that the action be reopened on June 30, 2006. (Def. Proposed Findings of Fact ¶ 14; Letter from O'Leary, E. to Boyle, J., dated June 30, 2006.) On August 3, 2006, the parties entered into a Supplemental Stipulation of Settlement (the "Stipulation"), which amended the parties prior Stipulation of Settlement with respect to the fringe benefit contributions alleged to be due and owing by RRZ Trucking for the period September 1, 2001 through June 30, 2003, and provided for the Funds to audit RRZ Trucking's books and records for the period July 1, 2003 through June 30, 2006, in order to determine the amount of additional contributions due for that time period.[2] (Def. Proposed Findings of Fact ¶¶ 16-19; Pl. Ex. 1 ¶ 9.) The Stipulation again provided for the reopening of this matter within sixty days of RRZ

---

[1] By the consent of the parties, this action was reassigned to the undersigned for all purposes on August 4, 2006. (Consent to Jurisdiction by U.S. Magistrate Judge, dated Aug. 4, 2006.)

[2] The Stipulation provided for the payment by RRZ Trucking of $157,628.51 in delinquent fringe benefit contributions, which counsel for plaintiffs represented to the Court at the inquest held on January 14, 2011 had been paid in full. (1/14/11 Tr. 3.)

Trucking's receipt of the Funds' audit findings in the event the parties disputed the amount of contributions found to be due and owing. (Def. Proposed Findings of Fact ¶ 20; Pl. Ex. 1 ¶ 10.)

Pursuant to the latter Stipulation, RRZ Trucking permitted the Funds to audit its books and records for the period July 1, 2003 through June 30, 2006. (Pl. Proposed Findings of Fact ¶ 10; Pl. Ex. 1 ¶ 9.) For that time period, RRZ Trucking had submitted remittance reports demonstrating a total of 456 hours of covered work under the CBA. (Pl. Proposed Findings of Fact ¶ 9; Pl. Ex. 3.) The Funds engaged the accounting firm of Abrams, Herde & Merkel LLP ("AHM") to conduct certain agreed-upon procedures and determine whether RRZ Trucking accurately reported all hours worked and paid all contributions due for the time period in dispute. (Pl. Proposed Findings of Fact ¶ 11; Def. Proposed Findings of Fact ¶ 47; 11/4/10 Tr. 37.)

Richard Bamberg, a payroll auditor at AHM reviewed the records provided by RRZ Trucking. (Pl. Proposed Findings of Fact ¶ 12; Def. Proposed Findings of Fact ¶ 49; 11/4/10 Tr. 37.) In conducting his review, Mr. Bamberg examined RRZ Trucking's quarterly federal tax returns, quarterly state wage reports, payroll journals, federal partnership income tax returns and its general ledger. (Pl. Proposed Findings of Fact ¶ 16; Def. Proposed Findings of Fact ¶ 51; Def. Ex. D n.1.) The payroll records indicated that although RRZ Trucking paid its employees each month from July 2003 through August 2005, as well as from December 2005 through January 2006 and March 2006 through May 2006, it had not made any of the required fringe benefit contributions to the Funds for those periods. (Pl. Proposed Findings of Fact ¶ 18; 11/4/10 Tr. 38; Def. Ex. D ¶ 16.)

AHM issued its original audit[3] (the "Original Audit") on November 3, 2008, indicating that, for the period July 1, 2003 through June 30, 2006, RRZ Trucking failed to pay $661,644.77 in fringe benefit contributions. (Pl. Proposed Findings of Fact ¶ 33; Def. Proposed Findings of Fact ¶ 50; Def Ex. D ¶8, Ex. K.) Of that amount, AHM determined that $408,008.33 represented delinquent contributions for employees on RRZ Trucking's payroll, while $251,999.75 represented delinquent contributions for subcontractors and/or outside truck hires.[4] (Def. Proposed Findings of Fact ¶ 50; Def. Ex. K.) AHM also determined that RRZ Trucking owed $479,542.18 in interest through September 30, 2008, as well as $5,567.50 in audit fees.[5] (Pl. Proposed Findings of Fact ¶ 33; Def. Ex. D ¶ 8, Ex. K.) The Original Audit was provided to RRZ Trucking by the Funds on November 8, 2008 and did not contain page number four, entitled "Notes to Fund Office."[6] (Pl. Proposed Findings of Fact ¶ 35; Def. Ex. K.)

---

[3] Much of defendant's case during the inquest focused on the assertion that an audit was not actually conducted and issued in this action, but rather AHM issued an "agreed-upon procedures report," which defendant contended was substantially different than an audit. The rebuttal testimony by plaintiff's expert, Philip Vivirito, a senior manager with Bonde Beebe Accountants and Advisors, established that while there is a significant difference between a payroll audit and an agreed-upon procedures review, the reports issued by AHM are essentially payroll audits and not agreed-upon procedures reports, despite the use of the "agreed-upon procedures" terminology by AHM. (1/14/11 Tr. 37-40, 45.)

[4] The remaining $1,636.69 represented delinquent contributions for shop steward hours that were later amended to $77 and subsequently withdrawn by the Funds. (Def. Proposed Findings of Fact ¶ 50; 11/4/10 Tr. 22.)

[5] Although the Original Report covers the period from July 1, 2003 through December 31, 2006, there were no findings for any period after May 2006. (Pl. Proposed Findings of Fact ¶ 33; Def. Ex. D ¶ 9.)

[6] Defendant also spent a great deal of time during the inquest focusing on the Funds' failure to provide it with the "Notes to Fund Office" page of the Original Audit. However, counsel for defendant confirmed to the Court that it had in fact received the disputed page prior to the commencement of inquest proceedings in November 2010. (1/14/10 Tr. 50.)

On August 12, 2010, the Funds issued a revised audit (the "Revised Audit"), which reduced the number of shop steward hours and reduced the interest rate applicable from 18% to 16% for the period commencing November 2003. (Pl. Proposed Findings of Fact ¶ 38; Def. Proposed Findings of Fact ¶¶ 72-73; Pl. Ex. 6; Def. Ex. D ¶ 24.) The Revised Audit also updated the interest calculation from September 30, 2008 to September 20, 2010. (Pl. Proposed Findings of Fact ¶ 38; Pl. Ex. 6.) The Revised Audit was provided to RRZ Trucking on September 2, 2010 by the Funds and this time included page four, entitled "Notes to Fund Office." (Pl. Proposed Findings of Fact ¶ 39; Pl. Ex. 6.) The Revised Audit found that RRZ Trucking failed to report 28,592.25 hours of covered work to the Funds, resulting in an underpayment of $660,085.20 in fringe benefit contributions. (Pl. Proposed Findings of Fact ¶ 40; Pl. Ex. 6.) The Revised Audit further found that RRZ Trucking was liable for $645,454.20 in interest, as well as $645,454.20 in liquidated damages and $5,657.50 in audit fees. (Id.)

Pursuant to the Stipulation, the Funds requested that this action be reopened by letter dated July 28, 2010. (Letter from O'Leary, E. to Boyle, J., dated July 28, 2010.) On September 2, 2010, the Funds provided the Court with its Statement of Damages, seeking to recover the unpaid contributions, interest, liquidated damages and audit fees set forth in the Revised Report, as well as attorney's fees and costs. (Pl. Stmt. of Damages dated Sept. 2, 2010.) An inquest on damages was held on November 4, 2010, November 8, 2010, December 10, 2010 and January 14, 2011, during which the Funds offered the testimony of Theresa Cody, an employee in the Funds' collection department, Richard Bamberg, the accountant who conducted the audit for the Funds, and Phillip Vivirito, an expert on payroll auditing. RRZ Trucking presented no fact witnesses and only offered the testimony of one expert witness, William Murphy, a certified

public accountant who was qualified by the Court as an expert in the field of accounting.[7]

DISCUSSION

I.  Legal Standard

Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145; see also Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 313 (2d Cir. 1990). "Section 502 of ERISA, 29 U.S.C. § 1132(a)(3), grants the trustees of a plan the right to bring an action in federal district court to enforce an employer's duty under section 515." Demolition Workers Union v. Mackroyce Contracting Corp., No. 97 Civ. 4094, 2000 WL 297244, at *2 (S.D.N.Y. Mar. 22, 2000) (citing Benson, 907 F.2d at 312-13). Here, neither party disputes the existence of a valid collective bargaining agreement between the parties or RRZ Trucking's obligation to make the required contributions.[8] (Pl. Proposed Findings of Fact ¶ 4-5; Def. Proposed Findings of Fact ¶ 5; Pl. Ex 5.)

Under ERISA, an employer also has certain record-keeping and reporting requirements:

---

[7] RRZ Trucking initially offered the testimony of its expert witness, John Golaszewski; however, Mr. Golaszewski's testimony was stricken on consent after he falsely testified that he was a certified public accountant licensed to practice in New Jersey.

[8] "A finding that a collective bargaining agreement exists during the relevant time period is critical to the question of whether the defendant[] [was] obligated to make contributions to the Funds." Fuchs v. Cristal Concrete Corp., No. CV 04-1555, 2006 WL 2548169, at *6 (E.D.N.Y. July 18, 2006) (citing Brown v. Dominic Prisco Transport, Inc., No. CV 95-1121, 1997 WL 1093463, at *3 (E.D.N.Y. Aug. 16, 1997)).

"[E]very employer shall . . . maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1). "This requirement forces employers 'to furnish to benefit plans the information needed for the plans' fulfillment of their reporting duties.'" Hanley v. Ocean Beach Club, Inc., No. 96 Civ. 4478, 1998 WL 65990, at *5 (S.D.N.Y. Feb. 18, 1998) (quoting Central States, S.E. & S.W. Areas Pension Fund v. Central Transport Inc., 472 U.S. 559, 573 (1985)). The parties herein do not dispute that RRZ Trucking is obligated to maintain such records, yet failed to do so. (Pl. Reply to Def. Proposed Findings ¶ 3; Def. Proposed Findings of Fact ¶ 59[9]; 114/4/10 Tr. 39-40; 12/4/10 Tr. 39.)

"Since the employer is in the best position to know the number of hours worked, courts have determined that the policies of ERISA are advanced by the imposition of a burden that reflects the employer's duties under ERISA." Demolition Workers Union, 2000 WL 297244, at *7 (quoting Local 282 Welfare Trust Fund v. A. Morrison Trucking, Inc., No. CV-92-2076, 1993 WL 120081, at *1 (E.D.N.Y. Mar. 30, 1993)). Accordingly, while the Second Circuit has not specifically addressed the applicable standard where a benefit fund contests the amount of contributions owed by an employer, other circuits to consider the issue have held that where a benefit fund produces evidence "raising genuine questions concerning an employer's failure to maintain adequate records," the burden shifts to the employer to come forward with "evidence

---

[9] Defendant's Proposed Findings of Fact and Conclusions of Law explicitly states that "[n]either the payroll records of RRZ nor its tax returns reflect hours worked for either individual employees or subcontractors/outside truck hires. The records reflect only wages paid." (Def. Proposed Findings of Fact ¶ 59.) Accordingly, since RRZ Trucking failed to maintain proper records, as required by ERISA, it was impossible for plaintiff's accountant to determine precisely the amount of contributions due.

either of the precise number of hours worked or to negate the reasonableness of the inferences to be drawn from the plaintiff fund's evidence." Hanley, 1998 WL 65990, at *5 (citing Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc., 30 F.3d 692, 696-97 (6th Cir. 1994); Brick Masons Pension Trust v. Industrial Fence & Supply Inc., 839 F.2d 1333, 1338 (9th Cir. 1988); Combs v. King, 764 F.2d 818, 825-26 (11th Cir. 1985)).[10] "If the employer fails to produce such evidence, the court may award damages to the trustee[s] even where the damages are an approximate amount." Hanley, 1998 WL 65990, at *5 (citing Combs, 764 F.2d at 826); Grabois v. Action Acoustics, Inc., No. 94 Civ. 7386, 1995 WL 662127, at *3 (S.D.N.Y. Nov. 9, 1995). Several other courts within the Eastern and Southern districts have adopted and applied this burden-shifting analysis when deciding ERISA actions. See, e.g., Demolition Workers Union, 2000 WL 297244, at *7 (applying burden-shifting analysis and citing other cases that have done so); Local 282 Welfare Trust Fund, 1993 WL 120081, at *1 (applying burden-shifting analysis).

II.     RRZ Trucking Has Not Carried Its Burden

In the within action, plaintiffs demonstrated through both testimony and documentary evidence that RRZ Trucking failed to pay $660,085.20 in fringe benefit contributions for the period July 1, 2003 through June 30, 2006. In support of their claim, plaintiffs offered the audit

---

[10] While the Second Circuit has not specifically adopted a burden-shifting standard in the ERISA context, it has cited the cases discussed above with approval when discussing the allocation of burdens. See, e.g., LaBarbera v. J.D. Collyer Equip. Corp., 337 F.3d 132, 139 n.3 (2d Cir. 2003) (noting that "some courts have held that once trustees to an ERISA fund produce evidence raising genuine questions about the accuracy of a particular employer's records, the burden shifts to the employer to show the precise amount of work performed").

reports compiled by the accounting firm of Abrams, Herde & Merkel LLP as well as the testimony and declaration of Richard Bamberg, a payroll auditor for AHM, who explained the steps taken to conduct the audit and how he arrived at the amount of delinquent contributions due and owing. "Courts have found it appropriate to rely on an audit or an auditor's opinion to prove that defendant employers did not make required contributions to funds." Hanley, 1998 WL 65990, at *5 (quoting Grabois, 1995 WL 662127, at *5 n.3 and citing cases). Accordingly, the Trustees herein have "raise[d] a genuine question[] concerning [defendant's] failure to maintain adequate records," thereby shifting the burden to RRZ Trucking to refute the plaintiffs' evidence. Hanley, 1998 WL 65990, at *5.

RRZ Trucking has failed to sustain its burden. While RRZ Trucking spent a great deal of time during the inquest proceedings challenging the terminology used to describe the audit performed - i.e., whether it was an audit or an agreed-upon procedures review - and arguing that it was not supplied with all of the information necessary to determine whether the audit's findings were accurate, it failed to produce any evidence that raised a genuine question as to the accuracy of the audit performed or Mr. Bamberg's testimony. Moreover, RRZ Trucking failed to present any evidence that disputed the audit's findings regarding the amount of delinquent contributions due and owing, despite having been in possession of both audit reports for approximately two years prior to the inquest proceedings and having control of all of its books and records.[11] See Durso v. Cappy's Food Emporium, Ltd., No. CV 05-3498, 2006 WL

---

[11] RRZ Trucking also contends that the CBA's application is limited to work performed solely within New York City and that it is not required to remit contributions for work performed exclusively in New Jersey. (Def. Proposed Findings of Fact ¶¶ 32-33.) However, as plaintiffs point out, the CBA does not contain any such geographical limitation. (Pl. Proposed Conclusions of Law ¶ 68; Pl. Ex. 5.) Moreover, as Mr. Bamberg testified, in order to avoid this

3725546, at *2 (E.D.N.Y. Dec. 14, 2006) (granting summary judgment in favor of plaintiffs where defendant failed to make any "substantive argument as to the accuracy of the audit").

Based on the foregoing, the Court finds that plaintiffs have made an adequate showing to sustain their burden as to unpaid fringe benefit contributions due and owing. RRZ Trucking has failed to demonstrate that the amount of delinquent contributions calculated by the Funds is inaccurate. Plaintiffs are therefore entitled to damages.

III.     Damages

Section 515 of ERISA is designed to "promote the prompt payment of contributions and assist plans in recovering the costs incurred in connection with delinquencies." Iron Workers Dist. Council v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1506 (2d Cir. 1995). To ensure that employers will make their contributions in a timely manner, Section 1132(g)(2) of ERISA provides for additional monies to be paid by delinquent employers. See 29 U.S.C. § 1132(g)(2); Iron Workers Dist. Council, 68 F.3d at 1506. Section 1132(g)(2) of ERISA provides, in pertinent part, that:

> In any action . . . by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan - (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of - (i) interest on the unpaid contributions, or (ii) liquidated damages provided under the plan not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the

---

issue, he excluded those invoices from his audit that pertained to work exclusively performed in New Jersey. (Pl. Reply to Def. Proposed Findings ¶ 14; 11/4/10 Tr. 57-59.) Accordingly, RRZ Trucking's argument concerning geographical limitation fails entirely.

action, to be paid by the defendant.[12]

29 U.S.C. § 1132(g)(2).

A. Delinquent Contributions

Pursuant to the audit conducted by AHM, the results of which the Court credits, the amount of delinquent fringe benefit contributions for the period July 1, 2003 through June 30, 2006 is $660,085.20. (Pl. Ex. 6.) Accordingly, plaintiffs are awarded damages in this amount.

B. Interest

Pursuant to ERISA, where judgment is entered in favor of a benefit plan, the plan is also entitled to an award of interest on the unpaid contributions. See 29 U.S.C. § 1132(g)(2)(B). Under the terms of the Stipulation in effect between the parties, interest is calculated at a rate of sixteen percent (16%) per annum. (Pl. Ex. 1 ¶ 10.) As of September 20, 2010, the interest due and owing amounted to $645,454.20. (Pl. Ex. 6.)

Plaintiffs are also entitled to interest from September 20, 2010 through the date of this Order. Interest continues to accrue at a rate of $289.35 per day.[13] Accordingly, the interest due and owing for the period September 20, 2010 through today is $70,022.70. When added to the amount of interest due and owing as of September 20, 2010, the total interest due to plaintiffs is $715,476.90.

Accordingly, plaintiffs are awarded interest on the unpaid contributions in the amount of

---

[12] The Stipulation between the parties also provides for the recovery of delinquent contributions, interest, liquidated damages and attorney's fees and costs, pursuant to ERISA. (Pl. Ex. 1 ¶ 10.)

[13] To determine per diem interest, the amount of interest due on a per annum basis is divided by 365 days. Using a per annum rate of 16%, interest is accruing at a rate of $105,613.63 per year. When divided by 365 days, this amounts to a per diem rate of $289.35.

$715,476.90.

C. Liquidated Damages

Where an employer fails to make the required fringe benefit contributions, ERISA also provides for an award of liquidated damages to the benefit plan:[14]

> In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan -
>
> \* \* \*
>
> (C) an amount equal to the greater of -
>   (i) interest on the unpaid contributions or,
>   (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount [of unpaid contributions].

29 U.S.C. § 1132(g)(2)(C).

Plaintiffs herein are entitled to an additional award of interest since that amount is greater than twenty percent (20%) of the unpaid contributions.[15] Accordingly, plaintiffs are awarded liquidated damages in the amount of $715,476.90.

D. Post-Judgment Interest

28 U.S.C. § 1961 states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered. See 28 U.S.C. § 1961(a) (stating that "[i]nterest *shall* be

---

[14] The Stipulation herein also provides for the payment of liquidated damages. (Pl. Ex. 1 ¶ 10.)

[15] Twenty percent (20%) of the unpaid contributions amounts to $132,017.04.

allowed") (emphasis added); see also Lewis v. Whelan, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."). "Such interest shall be calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). This interest is to be "computed daily to the date of payment." Id. § 1961(b).

Accordingly, plaintiffs are awarded post-judgment interest on their monetary award, to be calculated by the Clerk of the Court pursuant to 28 U.S.C. § 1961.

E. Audit Fees

Plaintiffs also seek to recover their fees incurred in connection with the audit conducted in this action in the amount of $5,567.50. (Pl. Ex. 6; Def. Ex. D ¶ 8.) The costs of an audit are routinely recoverable in ERISA actions.[16] See, e.g., Gesauldi v. MBM Indus., Inc., No. CV 10-2607, 2010 U.S. Dist. LEXIS 96319, at *5 (E.D.N.Y. Sept. 13, 2010) (awarding $4,260 in audit costs); Masino v. A to E, Inc., No. 09 CV 1651, 2010 U.S. Dist. LEXIS 95583, at *22 (E.D.N.Y. Sept. 3, 2010) (awarding $1,137 in audit fees); Gesualdi v. Andrews Trucking Corp., No. 09 CV 565, 2010 U.S. Dist. LEXIS 54596, at *3 (E.D.N.Y. June 3, 2010) (awarding $13,382.50 in audit fees). Accordingly, the Court finds the audit fees requested of $5,567.50 to be both recoverable and reasonable and as such, awards the requested fees to plaintiffs.

F. Attorney's Fees and Costs

Under ERISA, plaintiffs are also entitled to recover their "reasonable attorney's

---

[16] The Trust Agreement also provides for the recovery of audit fees. (Pl. Ex. 2.)

fees and costs of the action."[17] 29 U.S.C. § 1132(g)(2)(D). The award of attorney's fees is "mandatory for suits involving delinquent employers." Iron Workers Dist. Council, 68 F.3d at 1506; see also Cement & Concrete Workers Dist. Council Welfare Fund v. Baroco Contracting Corp., No. 08-cv-1671, 2009 U.S. Dist. LEXIS 27759, at *6 (E.D.N.Y. Apr. 2, 2009) (stating that ERISA "creates a mandatory right to . . . attorney's fees in any case in which judgment in favor of a plan is awarded"); Demopoulos v. Mystic Tank Lines Corp., No. 07 Civ. 9451, 2008 U.S. Dist. LEXIS 86129, at *11 (S.D.N.Y. Oct. 16, 2008) ("When a plaintiff prevails in an ERISA action for unpaid contributions, an award of attorneys' fees and costs . . . is mandatory."). While the award itself is mandatory, "the amount of any such award rests within the Court's discretion." Mason Tenders Dist. Council v. Aurash Constr. Corp., Nos. 05 Civ. 1891, 04 Civ. 2427, 2006 U.S. Dist. LEXIS 10250, at *7 (S.D.N.Y. Mar. 14, 2006) (quotation omitted).

Attorney's fees should be "documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 172 (2d Cir. 1998). Here, plaintiffs did not submit the amount of fees incurred or any supporting evidence to substantiate their claim for attorney's fees and costs. Plaintiffs instead request that they be permitted to submit an application for attorney's fees and costs within fourteen (14) days after entry of judgment. (Pl. Proposed Conclusions of Law ¶ 72.) Plaintiffs' request is granted. Accordingly, plaintiffs' attorney's fees and costs will be determined upon receipt of the appropriate documentary evidence. Plaintiffs are directed to make any such request within fourteen (14) days of the date of this Order.

---

[17] Both the Trust Agreement and the Stipulation also provide for the recovery of attorney's fees and costs. (Pl. Ex. 1, Ex. 2 ¶ 10.)

CONCLUSION

For the foregoing reasons, and based on the evidence presented at the inquest proceedings held before the Court, plaintiffs are awarded damages as follows: (1) unpaid fringe benefit contributions in the amount of $660,085.20; (2) interest in the amount of $715,476.90; (3) liquidated damages in the amount of $715,476.90; (4) post-judgment interest, to be calculated by the Clerk of the Court pursuant to 28 U.S.C. § 1961; and (5) audit fees in the amount of $5,567.50, for a total monetary award of $2,096,606.50, plus reasonable attorney's fees and costs, in an amount to be determined upon receipt of plaintiffs' supporting documentation. Such documentation shall be filed within fourteen (14) days of the date of this Order. Judgment will be entered after the Court determines plaintiffs' reasonable attorney's fees and costs.


**SO ORDERED:**

Dated: Central Islip, New York
      May 20, 2010

                                          /s/ E. Thomas Boyle
                                          E. THOMAS BOYLE
                                          United States Magistrate Judge